# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
KEVIN LANGNER

**DEFENDANTS**
TARGET CORPORATION, et al.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hennepin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew A. Luber, Esq.
McOmber McOmber & Luber, P.C.
39 E. Main Street, Marlton, NJ 08053, 856-985-9800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1   U.S. Government
Plaintiff

❏ 2   U.S. Government
Defendant

☒ 3   Federal Question
*(U.S. Government Not a Party)*

❏ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | Liability | ❏ 368 Asbestos Personal Injury Product | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | ❏ 340 Marine | Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer Protection Act |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | Product Liability | Leave Act | ❏ 864 SSID Title XVI | Exchange |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 895 Freedom of Information Act |
| ❏ 230 Rent Lease & Ejectment | ☒ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 896 Arbitration |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 899 Administrative Procedure Act/Review or Appeal of |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | ❏ 950 Constitutionality of State Statutes |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | | ❏ 550 Civil Rights | Actions | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

❏ 2   Removed from
State Court

❏ 3   Remanded from
Appellate Court

❏ 4   Reinstated or
Reopened

❏ 5   Transferred from
Another District
*(specify)*

❏ 6   Multidistrict
Litigation -
Transfer

❏ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. 2601, ("FMLA"), and 42 U.S.C. § 12101, et seq ("ADA")
Brief description of cause:
Plaintiff is alleging disability discrimination and FMLA violations.

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
greater than $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
01/27/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Lansdale, Pennsylvania, _____

Address of Defendant: _____ Minneapolis, Minnesota _____

Place of Accident, Incident or Transaction: _____ Philadelphia, Pennsylvania _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/27/2021 _____ _____ 309323

*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    **Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.**    **Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Matthew A. Luber, Esq. , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 01/27/2021 _____ _____ 309323

*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Kevin Langner | : | CIVIL ACTION |
| v. | : | |
| Target Corporation, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court. (See reverse side of this form for a detailed explanation of special
  management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        ( X )


| | | |
|---|---|---|
| January 27, 2021 | Matthew A. Luber, Esq. | Plaintiff, Kevin Langner |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 856-985-9800 | 856-263-2450 | mal@njlegal.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN LANGNER, <br><br> Plaintiff, <br><br> v. <br><br> TARGET CORPORATION, REED GROUP, and MARQUITA JOHNSON, <br><br> Defendants. | CIVIL ACTION NO.: <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Kevin Langner ("Plaintiff"), hereby files this Complaint against Defendants Target Corporation ("Defendant Target"), Reed Group ("Defendant Reed"), and Defendant Marquita Johnson ("Defendant Johnson") (collectively "Defendants"), alleges as follows:

## INTRODUCTION

1.     This case concerns an employer focusing on its bottom-line and turning its back on an employee at the time the employee needed the encouragement, support, and employer-based medical insurance the most.  With a newborn child at home and his 3-year-old son having been diagnosed with Leukemia, Plaintiff took approved leave and short-term disability pursuant to Defendant Target's internal policy as an accommodation for a disability.  Inexplicably, while the Plaintiff was out on the approved leave and while his son was in the hospital receiving critical live-saving treatment to fight a deadly cancer, Defendants suddenly and pretextually terminated Plaintiff's employment. Even worse, without an investigation or even discussing the matter with Plaintiff, Defendants purported to terminate Plaintiff because did not give one of his subordinates a last "warning" during a disciplinary matter that *occurred months prior.*

1

2.      In reality, Defendants discriminated and retaliated against Plaintiff because of his disability; they retaliated against him for taking federally protected leave and for requesting a reasonable workplace accommodation; they failed to participate in the interactive process at all, let alone in good faith; they interfered with his federally protected, and company approved leave; and they summarily terminated his employment under false pretense, all of which is in violation of the Family and Medical Leave Act, 29 U.S.C. 2601, ("FMLA"), Americans with Disabilities Act, 42 U.S.C. § 12101, et seq ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").  Defendants conduct not only is shameful, it is against the law. Claimant accordingly brings this Complaint.

## PARTIES

3.      Plaintiff is an individual residing at 1305 Oak Circle, Lansdale, Pennsylvania, 19446.  At all relevant times, Plaintiff was employed by Defendant Target as an Executive Team Lead at the Target store located at 11000 Roosevelt Blvd, Philadelphia, Pennsylvania 19116.

4.      Defendant Target is headquartered in Minneapolis, Minnesota.  At all times relevant hereto, Plaintiff worked at Defendant Target's location at 11000 Roosevelt Blvd, Philadelphia, Pennsylvania 19116.  At all times relevant here to, Defendant Target is an "employer" as defined by the FMLA and ADA.

5.      Defendant Reed is headquartered in Westminster, Colorado.  At all times relevant hereto, Defendant Reed group administered and supported Defendant Target's leaves of absence policies.

6.      At all times relevant hereto, Defendant Johnson is an individual employed by Defendant Target as a Human Resources Business Partner.  This claim is brought against Defendant Johnson in her individual capacity and/or as an agent or servant of Defendant Target.

## JURISDICTION AND VENUE

7.     The causes of action which form the basis of this matter arise under FMLA, the ADA, and the PHRA.

8.     This District Court has jurisdiction over Count I (FMLA) pursuant to 29 U.S.C. §2601.

9.     The District Court has supplemental jurisdiction over Count II (ADA) pursuant to 42 U.S.C. §12101, et seq.

10.     The District Court has supplemental jurisdiction over Counts III and IV (PHRA) pursuant to 28 U.S.C. §1367.

11.     Venue is proposed in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

12.     The unlawful acts and practices of Defendant Target were committed within or upon the direction of Defendant Target's agents, servants, employees and/or representatives within the Commonwealth of Pennsylvania and within this District.

13.     On or about April 23, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). Attached as Exhibit "A" is a true and correct copy of Plaintiff's Charge of Discrimination.

14.     On or about December 11, 2020, the EEOC issued Plaintiff a Notice of Right to Sue. Attached as Exhibit "B" is a true and correct copy of Plaintiff's Notice of Right to Sue.

## FACTS COMMON TO ALL CLAIMS

15.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

16.     Defendant Target is a general merchandise retailer with stores in all fifty (50) U.S. states and the District of Columbia.

17.     Defendant Target employees over 350,000 team members.

18.     Defendant Target has 1,871 stores in the United States.

19.     Defendant Target boasts that, "Our team members are the heart of Target's business, so we invest in opportunities to grow in their careers, take care of themselves and their families, and make a difference for our guests and their communities."

20.     Despite this claim to help its team members "take care of themselves and their families," Defendant Target pretextually terminated Plaintiff's employment while Plaintiff was out on leave for his own medical condition related to the anxiety and mental health issues that had arisen after his oldest child had been diagnosed with Leukemia.

21.     In fact, Plaintiff's son had just spent seven (7) days in the hospital as a result of the Leukemia when Plaintiff was advised that his employment had been terminated.

**Plaintiff's Employment with Target--Generally**

22.     Plaintiff had been employed with Defendant Target for approximately eleven years prior to his termination.

23.     Plaintiff had been employed at the Target located at 11000 Roosevelt Blvd, Philadelphia, Pennsylvania 19116, since approximately November 2018.

24.     At the time of Plaintiff's termination, he was employed as an Executive Team Lead with a salary of approximately $75,000 per year.

25.     Plaintiff obtained his medical benefits, for himself and his family, from Defendant Target.

26.     Plaintiff was an excellent employee with positive reviews and no disciplinary history.

27.     In July 2019, Plaintiff's wife gave birth to their second child.  Plaintiff took four weeks of paid leave per Defendant Target's policy and took FMLA leave, although he did not take all of the twelve (12) weeks allotted to him pursuant to the FMLA.

28.     Later that summer, in August 2019, Plaintiff's oldest son was diagnosed with Leukemia.  As a result, Plaintiff's son began intensive treatment, including (1) surgery under general anesthesia for insertion of a central line, (2) bone marrow aspirations and lumbar punctures under general anesthesia and sedation, (3) oral, subcutaneous, intravenous, and intrathecal chemotherapy, (4) steroids, (5) antibiotics, (6) physical therapy, and (7) platelet and blood transfusions.  Plaintiff's son has outpatient treatment one (1) to two (2) times per week, has had fourteen (14) days of inpatient care and two (2) emergency department visits.

29.     In early November 2019, Plaintiff was tasked with disciplining a ***subordinate*** because the subordinate used inappropriate language around customers.  Pursuant to Defendant Target policy, Plaintiff gave the subordinate a final warning.

30.     Plaintiff met with the subordinate in Plaintiff's office to discuss the discipline and the final warning.  As a result of receiving the final warning, the subordinate became angry and yelled, once again using inappropriate language.

31.     Plaintiff documented the meeting in Defendant's Target internal system, known as Workday.

32.     As a result of the subordinate's reaction to the meeting, the discipline and the final warning, Plaintiff also advised his manager, Nora Kelly ("Ms. Kelly"), about what transpired during Plaintiff's meeting with the subordinate.  Ms. Kelly requested that Plaintiff write up a

5

description of the subordinate's reaction. As such, Plaintiff drafted an email describing what happened during the meeting with the subordinate and emailed it to Ms. Kelly and Eve Brightcliffe, a human resources representative for Defendant Target.

33. Shortly thereafter, the subordinate was terminated for once again using inappropriate language in front of customers. The subordinate was terminated by another employee of Defendant Target.

34. Upon information and belief, the subordinate filed a complaint with Defendant Target after his termination.

35. Upon information and belief, the subordinate alleged that he was never advised of the final warning and never had a meeting with Plaintiff.

36. Sometime in November 2019, after the subordinate's termination, Ms. Kelly approached Plaintiff and asked Plaintiff if he did in fact meet with the subordinate and give him a final warning. Plaintiff advised Ms. Kelly that he had in fact met with the subordinate and reminded her that he had emailed her about the subordinate's angry reaction to the meeting.

37. Plaintiff was not questioned any further regarding the meeting with the subordinate and was not advised that there were any issues with the subordinate's termination.

### Plaintiff Requests Leave of Absence As An Accommodation For His Own Medical Condition

38. Subsequently, at the end of November 2019, Plaintiff requested and was given a leave of absence as an accommodation due to the anxiety and stress he suffered from as a result of his son's Leukemia and subsequent treatment.

39. The request for leave was granted.

40. His child's sickness and treatment caused him great anxiety and mental health issues.

41.     Plaintiff's leave commenced on November 25, 2019.  He was initially approved for leave through February 28, 2020.  Plaintiff took the remainder of his FMLA leave that was not used for the birth of his child.  After the FMLA leave expired in or around December 28, 2019, Plaintiff took some of the 150 days of short-term disability offered by Defendant Target.  In fact, had Plaintiff taken all of the leave and time off through February 28, 2020, he would still have had approximately seventy-six (76) days of short-term disability leave remaining.

42.     Throughout the time Plaintiff was out on leave, he was in communication with representatives from Defendant Reed and the Target Leave and Disability Team regarding his leave.

### Plaintiff Finds Out He Was Terminated

43.     Despite having been out of work on a leave of absence since November 25, 2019, Plaintiff was not contacted by anyone from Defendant Target until the week of February 3, 2020.  During that week, Plaintiff received three (3) phone calls from Defendant Johnson.  She left two (2) voicemails simply asking Plaintiff to call her back.  There was no other information provided in the voicemails or any indication as to why Defendant Johnson was calling Plaintiff.  Nothing in the voicemails led Plaintiff to believe that there were any issues with his employment, that he was under any type of investigation or that he was going to be terminated.

44.     However, due to the serious medical issues with his son, Plaintiff did not immediately return the phone calls.  In fact, Plaintiff's son was subsequently admitted to the hospital on February 10, 2020 and was in the hospital until February 16, 2020.  During that time, Plaintiff's son was admitted to the hospital for fevers and possible infection.  His blood count (CBC) was low, specifically his white blood cells (WBC) and absolute neutrophil count (ANC).

During his time inpatient, he received several platelet and blood transfusions and was put on antibiotics.

45.     This was an extremely stressful, anxiety-inducing, depressing and emotionally exhausting time for Plaintiff and his family.

46.     On or about February 15th or 16th, 2020, Plaintiff logged into his leave account. The account contained a notification that Plaintiff had until April 21, 2020 to apply for COBRA benefits.  Moreover, Plaintiff noted that his return date had been changed from February 28, 2020 to February 9, 2020 and he was listed as having been terminated from employment with Defendant Target on February 11, 2020.

47.     Obviously, Plaintiff was very concerned and extremely upset because his family's medical benefits were through Defendant Target.  Given the fact that his son has Leukemia and had just spent six (6) days in the hospital, Plaintiff immediately tried to figure out what had occurred and why his account indicated that he had been terminated.

48.     On or about February 16, 2020, after having viewed the new information on his leave site, and after Plaintiff's son was released from the hospital, Plaintiff returned Defendant Johnson's calls.  However, she did not answer and Plaintiff left her a message asking for a call back.

49.     Plaintiff then reached out to Defendant Reed.  However, Defendant Reed did not have much information regarding the change in his employment status to terminated or the change to his return to work date.

50.     On February 17, 2020, Defendant Johnson returned Plaintiff's call.  She told Plaintiff that she had called "like five (5) times" and sent several letters prior to February 11, 2020, Plaintiff's termination date.  In fact, as explained above, Defendant Johnson only called three (3)

8

times, during a very difficult time in Plaintiff's life, and provided no information regarding what the calls were about in the voicemails.  Defendant Johnson's assertions were not only false, they were completely unreasonable and not made in good faith.

51.     Moreover, the only letter received by Plaintiff from Defendant Johnson was dated February 11, 2020, so Plaintiff did not receive it until **AFTER** the effective date of his termination. *See* Exhibit A.

52.     During the February 17, 2020 telephone conversation with Defendant Johnson, she advised Plaintiff that his employment had been terminated because their investigation into the termination of the subordinate revealed that Plaintiff never met with the subordinate or told the subordinate about the final warning.   This assertion, too, was completely false.

53.     Defendant Johnson explained to Plaintiff that she based her decision on a review of surveillance videos.  However, Defendant Johnson never confirmed with Plaintiff the date of his meeting with the subordinate about the final warning.  Additionally, upon information and belief, there are no surveillance cameras in the office where the meeting took place.

54.     Plaintiff's termination occurred just weeks after his FMLA leave ended and while he was still out on an approved leave as an ADA accommodation for his disability.

55.     Plaintiff's termination was pretextual and in retaliation for taking FMLA leave and requesting an ADA accommodation.

56.     Plaintiff was never interviewed by Defendant Johnson or any other human resources representative.  Even though Defendant Johnson alleges she reviewed surveillance videos and that the videos failed to show Plaintiff meeting with the subordinate, she failed to ask Plaintiff when the meeting with the subordinate occurred.   Therefore, it is unclear what

surveillance videos Defendant Johnson referred to and whether she was even looking at the correct date and time.

57.     Upon information and belief, Defendant Johnson has previously harassed employees who have been out on approved leave.

### Plaintiff Contacts Defendant Target's Human Resources Operating Center And Requests An Investigation Into His Termination

58.     After speaking with Defendant Johnson, on February 17, 2020, Plaintiff contacted Defendant Target's employee hotline to request an investigation into his discriminatory and retaliatory investigation.

59.     Plaintiff was advised that an investigation would be conducted and he would be contacted in approximately one week with the results.  Plaintiff did receive a call from a case manager requesting more information.   However, Plaintiff was never formally interviewed regarding his complaint.

60.     On March 10, 2020, Plaintiff was advised that his termination was upheld.

61.     As a result of Defendants' discriminatory and retaliatory actions, Plaintiff has lost his income, which is needed to care for his family.  Plaintiff has also lost his medical benefits, which are necessary for the care of his family, most importantly, for the treatment and care of his oldest son's cancer.

62.     As a result of Defendants' discriminatory and retaliatory actions, Plaintiff has suffered severe emotional distress, including, but not limited to, stress, anxiety, mental anguish and dysfunction and sleeplessness.  Additionally, Plaintiff has suffered physical issues, including stomach issues, reflux and back problems.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE AND RETALIATION
### (As to all Defendants)

63.　Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

64.　The FMLA provides certain employees with up to 12 weeks of unpaid, job-protected leave per year.

65.　Defendant Target at all times relevant hereto, employs fifty (50) or more employees.

66.　Upon information and belief, Defendant Reed at all times relevant hereto, employs fifty (50) or more employees.

67.　Plaintiff at all times relevant hereto, had worked for at least 1,250 hours during the twelve months prior to his previously mentioned period of leave eligibility.

68.　Defendant Target, Defendant Reed and Defendant Johnson wrongfully discharged Plaintiff in retaliation for Plaintiff taking FMLA leave.

69.　Defendant Target, Defendant Reed and Defendant Johnson unlawfully failed to reinstate Plaintiff to his former position or a comparable one in violation of the FMLA.

70.　Because of the unlawful actions undertaken by Defendants Target, Reed and Johnson, jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future, and suffer unprovided medical coverage for him and his family and incur unpaid medical bills.

**WHEREFORE,** Plaintiff demands judgment against Defendants Target, Reed, and Johnson, jointly or severally, for damages equal to wages, salary, employment benefits, or other compensation denied or lost, plus liquidated damages, interest, and costs of suit.

11

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE, DISCRIMINATION AND RETALIATION
### (Against All Defendants)

71.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

72.     Defendant Target at all times relevant hereto, employs fifteen (15) or more employees.

73.     Upon information and belief, Defendant Reed at all times relevant hereto, employs fifteen (15) or more employees.

74.     The ADA requires that employers provide reasonable accommodations for the disabled.

75.     Plaintiff at all times relevant hereto, was possessed of the requisite skill, experience, education, and other job-related requirements of his employment position with Defendant Target.

76.     Plaintiff could perform the essential functions of her employment position while working for Defendant Target.

77.     Defendant Target, Defendant Reed and Defendant Johnson discriminated against Plaintiff by failing at all relevant times to provide him with the reasonable accommodation requested in violation of the ADA including, but not limited to, additional leave time.

78.     It is the duty of an employer to engage a qualified employee in good faith in an inter-active process to determine if a reasonable accommodation can be accorded a disabled employee without resulting in undue prejudice to the employer.

79.     Defendant Target and Defendant Johnson discriminated against Plaintiff by failing to engage him in good faith in an interactive process to determine if continued leave was a

12

reasonable accommodation. Instead, Defendant Target and Defendant Johnson unlawfully terminated Plaintiff's employment while he was out on leave.

80. The ADA prohibits employers from retaliating against an employee for requesting an accommodation.

81. Defendants Target, Reed and Johnson pretextually terminated Plaintiff's employment as a result of Plaintiff's request for an accommodation.

82. The ADA prohibits employers from discrimination against an employee on the basis of the employee's disability.

83. Defendants Target, Reed and Johnson pretextually terminated Plaintiff's employment as a result of Plaintiff's disability.

84. As a direct and proximate cause of the Defendants' unlawful acts and omissions as previously mentioned, Plaintiff has been discharged from his position of employment with Defendant Target.

85. Because of the unlawful actions undertaken by Defendants Target, Reed and Johnson, jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future, and suffer unprovided medical coverage for him and his family and incur unpaid medical bills.

**WHEREFORE,** Plaintiff demands judgment against Defendants Target, Reed, and Johnson, jointly or severally, for damages equal to wages, salary, employment benefits, or other compensation denied or lost, plus liquidated damages, interest, and costs of suit.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT
## DISCRIMINATION DUE TO DISABILITY

86.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

87.     The acts, failures to act, and conduct of Defendant set forth above constitute unlawful discrimination on the basis Disability in violation of Plaintiff's rights under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

88.     Said violations were intentional and willful.

**WHEREFORE**, Plaintiff, respectfully demands judgment in his favor and against Defendants, and seeks all appropriate remedies under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 including compensatory and punitive damages, declaratory and injunctive relief, interest, costs (including expert witness fees), liquidated damages, negative tax consequence damages, attorney's fees and such other relief as the Court shall deem appropriate.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT
## RETALIATION

89.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

90.     The acts, failures to act, and conduct of Defendants set forth above constitute retaliation against Plaintiff for exercising his rights under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

91.     Defendants retaliated against Plaintiff for engaging in protected activities.

92.     Defendants, by and through their employees, retaliated against Plaintiff for having exercised is rights under federal and state law.  Said violations were intentional and willful.

14

**WHEREFORE**, Plaintiff respectfully demands judgment in his favor and against Defendant and seeks all appropriate remedies under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 including compensatory and punitive damages, declaratory and injunctive relief, interest, costs (including expert witness fees), liquidated damages, negative tax consequence damages, attorney's fees and such other relief as the Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Kevin Langner, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: January 27, 2021

**McOMBER McOMBER & LUBER, P.C.**

BY:   ***/s/ Matthew A. Luber, Esq.***

Matthew A. Luber, Esq.
39 E. Main Street
Marlton, NJ 08012
mal@njlegal.com
*Attorney for Plaintiff, Kevin Langner*

15

# EXHIBIT A

Kelly E. Adler, Esq.
  kea@njlegal.com
Matthew A. Luber, Esq.
  mal@njlegal.com
R. Armen McOmber, Esq.
  ram@njlegal.com
Peter D. Valenzano, Esq.
  pdv@njlegal.com
McOMBER McOMBER & LUBER, P.C.
39 East Main Street
Marlton, NJ 08053
(856) 985-9800 Phone
(856) 263-2450 Fax
*Attorneys for Charging Party, Kevin Langner*

| | |
|---|---|
| KEVIN LANGNER,<br><br>          Charging Party,<br><br>    v.<br><br>TARGET CORPORATION, REED GROUP, and MARQUITA JOHNSON,<br><br>         Respondent. | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>CHARGE NO.:<br><br><br>**EEOC CHARGE OF DISCRIMINATION** |

Charging Party Kevin Langner ("Charging Party"), by way of an EEOC Charge against Respondents Target Corporation ("Respondent Target"), Reed Group ("Respondent Reed"), and Respondent Marquita Johnson ("Respondent Johnson") (collectively "Respondents"), alleges as follows:

## **INTRODUCTION**

1.     This case concerns an employer focusing on its bottom-line and turning its back on an employee at the time the employee needed the encouragement, support, and employer-based medical insurance the most. With a newborn child at home and his 3-year-old son having been diagnosed with Leukemia, Charging Party took approved leave and short-term disability pursuant

1

to Respondent Target's internal policy as an accommodation for a disability.  Inexplicably, while the Charging Party was out on the approved leave and while his son was in the hospital receiving critical live-saving treatment to fight a deadly cancer, Respondents suddenly and pretextually terminated Charging Party's employment. Even worse, without an investigation or even discussing the matter with Charging Party, Respondents purported to terminate Charging Party because did not give one of his subordinates a last "warning" during a disciplinary matter that ***occurred months prior.***

2.       In reality, Respondents discriminated and retaliated against Charging Party because of his disability; they retaliated against him for taking federally protected leave and for requesting a reasonable workplace accommodation; they failed to participate in the interactive process at all, let alone in good faith; they interfered with his federally protected, and company approved leave; and they summarily terminated his employment under false pretense, all of which is in violation of the Family and Medical Leave Act, 29 U.S.C. 2601, ("FMLA"), Americans with Disabilities Act, 42 U.S.C. § 12101, et seq ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").  Respondents conduct not only is shameful, it is against the law. Claimant accordingly brings this Charge.

## PARTIES

3.       Charging Party is an individual residing at 1305 Oak Circle, Lansdale, Pennsylvania, 19446.  At all relevant times, Charging Party was employed by Respondent Target as an Executive Team Lead at the Target store located at 11000 Roosevelt Blvd, Philadelphia, Pennsylvania 19116.

4.       Respondent Target is headquartered in Minneapolis, Minnesota.  At all times relevant hereto, Charging Party worked at Respondent Target's location at 11000 Roosevelt Blvd,

Philadelphia, Pennsylvania 19116.   At all times relevant here to, Respondent Target is an "employer" as defined by the FMLA and ADA.

5.     Respondent Reed is headquartered in Westminster, Colorado.  At all times relevant hereto, Respondent Reed group administered and supported Respondent Target's leaves of absence policies.

6.     At all times relevant hereto, Respondent Johnson is an individual employed by Respondent Target as a Human Resources Business Partner.   This claim is brought against Respondent Johnson in her individual capacity and/or as an agent or servant of Respondent Target.

## FACTS COMMON TO ALL CLAIMS

7.     Charging Party repeats each and every allegation set forth above as if set forth fully herein at length.

8.     Respondent Target is a general merchandise retailer with stores in all fifty (50) U.S. states and the District of Columbia.

9.     Respondent Target employees over 350,000 team members.

10.     Respondent Target has 1,871 stores in the United States.

11.     Respondent Target boasts that, "Our team members are the heart of Target's business, so we invest in opportunities to grow in their careers, take care of themselves and their families, and make a difference for our guests and their communities."

12.     Despite this claim to help its team members "take care of themselves and their families," Respondent Target pretextually terminated Charging Party's employment while Charging Party was out on leave for his own medical condition related to the anxiety and mental health issues that had arisen after his oldest child had been diagnosed with Leukemia.

13.     In fact, Charging Party's son had just spent seven (7) days in the hospital as a result of the Leukemia when Charging Party was advised that his employment had been terminated.

**<u>Charging Party's Employment with Target--Generally</u>**

14.     Charging Party had been employed with Respondent Target for approximately eleven years prior to his termination.

15.     Charging Party had been employed at the Target located at 11000 Roosevelt Blvd, Philadelphia, Pennsylvania 19116, since approximately November 2018.

16.     At the time of Charging Party's termination, he was employed as an Executive Team Lead with a salary of approximately $75,000 per year.

17.     Charging Party obtained his medical benefits, for himself and his family, from Respondent Target.

18.     Charging Party was an excellent employee with positive reviews and no disciplinary history.

19.     In July 2019, Charging Party's wife gave birth to their second child.  Charging Party took four weeks of paid leave per Respondent Target's policy and took FMLA leave, although he did not take all of the twelve (12) weeks allotted to him pursuant to the FMLA.

20.     Later that summer, in August 2019, Charging Party's oldest son was diagnosed with Leukemia.  As a result, Charging Party's son began intensive treatment, including (1) surgery under general anesthesia for insertion of a central line, (2) bone marrow aspirations and lumbar punctures under general anesthesia and sedation, (3) oral, subcutaneous, intravenous, and intrathecal chemotherapy, (4) steroids, (5) antibiotics, (6) physical therapy, and (7) platelet and

blood transfusions.  Charging Party's son has outpatient treatment one (1) to two (2) times per week, has had fourteen (14) days of inpatient care and two (2) emergency department visits.

21.    In early November 2019, Charging Party was tasked with disciplining a **subordinate** because the subordinate used inappropriate language around customers.  Pursuant to Respondent Target policy, Charging Party gave the subordinate a final warning.

22.    Charging Party met with the subordinate in Charging Party's office to discuss the discipline and the final warning.  As a result of receiving the final warning, the subordinate became angry and yelled, once again using inappropriate language.

23.    Charging Party documented the meeting in Respondent's Target internal system, known as Workday.

24.    As a result of the subordinate's reaction to the meeting, the discipline and the final warning, Charging Party also advised his manager, Nora Kelly ("Ms. Kelly"), about what transpired during Charging Party's meeting with the subordinate.  Ms. Kelly requested that Charging Party write up a description of the subordinate's reaction.  As such, Charging Party drafted an email describing what happened during the meeting with the subordinate and emailed it to Ms. Kelly and Eve Brightcliffe, a human resources representative for Respondent Target.

25.    Shortly thereafter, the subordinate was terminated for once again using inappropriate language in front of customers.  The subordinate was terminated by another employee of Respondent Target.

26.    Upon information and belief, the subordinate filed a Charge with Respondent Target after his termination.

27.    Upon information and belief, the subordinate alleged that he was never advised of the final warning and never had a meeting with Charging Party.

28.     Sometime in November 2019, after the subordinate's termination, Ms. Kelly approached Charging Party and asked Charging Party if he did in fact meet with the subordinate and give him a final warning.  Charging Party advised Ms. Kelly that he had in fact met with the subordinate and reminded her that he had emailed her about the subordinate's angry reaction to the meeting.

29.     Charging Party was not questioned any further regarding the meeting with the subordinate and was not advised that there were any issues with the subordinate's termination.

**Charging Party Requests Leave of Absence As An Accommodation For His Own Medical Condition**

30.     Subsequently, at the end of November 2019, Charging Party requested and was given a leave of absence as an accommodation due to the anxiety and stress he suffered from as a result of his son's Leukemia and subsequent treatment.

31.     The request for leave was granted.

32.     His child's sickness and treatment caused him great anxiety and mental health issues.

33.     Charging Party's leave commenced on November 25, 2019.  He was initially approved for leave through February 28, 2020.  Charging Party took the remainder of his FMLA leave that was not used for the birth of his child.  After the FMLA leave expired in or around December 28, 2019, Charging Party took some of the 150 days of short-term disability offered by Respondent Target.  In fact, had Charging Party taken all of the leave and time off through February 28, 2020, he would still have had approximately seventy-six (76) days of short-term disability leave remaining.

34.     Throughout the time Charging Party was out on leave, he was in communication with representatives from Respondent Reed and the Target Leave and Disability Team regarding his leave.

## Charging Party Finds Out He Was Terminated

35.     Despite having been out of work on a leave of absence since November 25, 2019, Charging Party was not contacted by anyone from Respondent Target until the week of February 3, 2020.  During that week, Charging Party received three (3) phone calls from Defendant Johnson. She left two (2) voicemails simply asking Charging Party to call her back.  There was no other information provided in the voicemails or any indication as to why Defendant Johnson was calling Charging Party.  Nothing in the voicemails led Charging Party to believe that there were any issues with his employment, that he was under any type of investigation or that he was going to be terminated.

36.     However, due to the serious medical issues with his son, Charging Party did not immediately return the phone calls.  In fact, Charging Party's son was subsequently admitted to the hospital on February 10, 2020 and was in the hospital until February 16, 2020.  During that time, Charging Party's son was admitted to the hospital for fevers and possible infection.  His blood count (CBC) was low, specifically his white blood cells (WBC) and absolute neutrophil count (ANC).  During his time inpatient, he received several platelet and blood transfusions and was put on antibiotics.

37.     This was an extremely stressful, anxiety-inducing, depressing and emotionally exhausting time for Charging Party and his family.

38.    On or about February 15th or 16th, 2020, Charging Party logged into his leave account.  The account contained a notification that Charging Party had until April 21, 2020 to apply for COBRA benefits.  Moreover, Charging Party noted that his return date had been changed from February 28, 2020 to February 9, 2020 and he was listed as having been terminated from employment with Respondent Target on February 11, 2020.

39.    Obviously, Charging Party was very concerned and extremely upset because his family's medical benefits were through Respondent Target.  Given the fact that his son has Leukemia and had just spent six (6) days in the hospital, Charging Party immediately tried to figure out what had occurred and why his account indicated that he had been terminated.

40.    On or about February 16, 2020, after having viewed the new information on his leave site, and after Charging Party's son was released from the hospital, Charging Party returned Defendant Johnson's calls.  However, she did not answer and Charging Party left her a message asking for a call back.

41.    Charging Party then reached out to Respondent Reed.  However, Respondent Reed did not have much information regarding the change in his employment status to terminated or the change to his return to work date.

42.    On February 17, 2020, Respondent Johnson returned Charging Party's call.  She told Charging Party that she had called "like five (5) times" and sent several letters prior to February 11, 2020, Charging Party's termination date.  In fact, as explained above, Defendant Johnson only called three (3) times, during a very difficult time in Charging Party's life, and provided no information regarding what the calls were about in the voicemails.  Defendant Johnson's assertions were not only false, they were completely unreasonable and not made in good faith.

43.     Moreover, the only letter received by Charging Party from Respondent Johnson was dated February 11, 2020, so Charging Party did not receive it until **AFTER** the effective date of his termination.  *See* Exhibit A.

44.     During the February 17, 2020 telephone conversation with Respondent Johnson, she advised Charging Party that his employment had been terminated because their investigation into the termination of the subordinate revealed that Charging Party never met with the subordinate or told the subordinate about the final warning.   This assertion, too, was completely false.

45.     Respondent Johnson explained to Charging Party that she based her decision on a review of surveillance videos.  However, Respondent Johnson never confirmed with Charging Party the date of his meeting with the subordinate about the final warning.  Additionally, upon information and belief, there are no surveillance cameras in the office where the meeting took place.

46.     Charging Party's termination occurred just weeks after his FMLA leave ended and while he was still out on an approved leave as an ADA accommodation for his disability.

47.     Charging Party's termination was pretextual and in retaliation for taking FMLA leave and requesting an ADA accommodation.

48.     Charging Party was never interviewed by Respondent Johnson or any other human resources representative.  Even though Respondent Johnson alleges she reviewed surveillance videos and that the videos failed to show Charging Party meeting with the subordinate, she failed to ask Charging Party when the meeting with the subordinate occurred.  Therefore, it is unclear what surveillance videos Respondent Johnson referred to and whether she was even looking at the correct date and time.

9

49.     Upon information and belief, Respondent Johnson has previously harassed employees who have been out on approved leave.

### Charging Party Contacts Respondent Target's Human Resources Operating Center And Requests An Investigation Into His Termination

50.     After speaking with Respondent Johnson, on February 17, 2020, Charging Party contacted Respondent Target's employee hotline to request an investigation into his discriminatory and retaliatory investigation.

51.     Charging Party was advised that an investigation would be conducted and he would be contacted in approximately one week with the results.  Charging Party did receive a call from a case manager requesting more information.  However, Charging Party was never formally interviewed regarding his Charge.

52.     On March 10, 2020, Charging Party was advised that his termination was upheld.

53.     As a result of Defendants' discriminatory and retaliatory actions, Charging Party has lost his income, which is needed to care for his family.  Charging Party has also lost his medical benefits, which are necessary for the care of his family, most importantly, for the treatment and care of his oldest son's cancer.

54.     As a result of Defendants' discriminatory and retaliatory actions, Charging Party has suffered severe emotional distress, including, but not limited to, stress, anxiety, mental anguish and dysfunction and sleeplessness.  Additionally, Plaintiff has suffered physical issues, including stomach issues, reflux and back problems.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE AND RETALIATION
### (As to all Respondents)

55.     Charging Party repeats each and every allegation set forth above as if set forth fully herein at length.

56.     The FMLA provides certain employees with up to 12 weeks of unpaid, job-protected leave per year.

57.     Respondent Target at all times relevant hereto, employs fifty (50) or more employees.

58.     Upon information and belief, Respondent Reed at all times relevant hereto, employs fifty (50) or more employees.

59.     Charging Party at all times relevant hereto, had worked for at least 1,250 hours during the twelve months prior to his previously mentioned period of leave eligibility.

60.     Respondent Target, Respondent Reed and Respondent Johnson wrongfully discharged Charging Party in retaliation for Charging Party taking FMLA leave.

61.     Respondent Target, Respondent Reed and Respondent Johnson unlawfully failed to reinstate Charging Party to his former position or a comparable one in violation of the FMLA.

62.     Because of the unlawful actions undertaken by Defendants Target, Reed and Johnson, jointly or severally, Charging Party has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future, and suffer unprovided medical coverage for him and his family and incur unpaid medical bills.

**WHEREFORE,** Charging Party demands judgment against Respondents Target, Reed, and Johnson, jointly or severally, for damages equal to wages, salary, employment benefits, or other compensation denied or lost, plus liquidated damages, interest, and costs of suit.

11

<u>**COUNT II**</u>
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE, DISCRIMINATION AND RETALIATION**
**(Against All Defendants)**

63.     Charging Party repeats each and every allegation set forth above as if set forth fully herein at length.

64.     Respondent Target at all times relevant hereto, employs fifteen (15) or more employees.

65.     Upon information and belief, Respondent Reed at all times relevant hereto, employs fifteen (15) or more employees.

66.     The ADA requires that employers provide reasonable accommodations for the disabled.

67.     Charging Party at all times relevant hereto, was possessed of the requisite skill, experience, education, and other job-related requirements of his employment position with Respondent Target.

68.     Charging Party could perform the essential functions of her employment position while working for Respondent Target.

69.     Respondent Target, Respondent Reed and Respondent Johnson discriminated against Charging Party by failing at all relevant times to provide him with the reasonable accommodation requested in violation of the ADA including, but not limited to, additional leave time.

70.     It is the duty of an employer to engage a qualified employee in good faith in an inter-active process to determine if a reasonable accommodation can be accorded a disabled employee without resulting in undue prejudice to the employer.

12

71.     Respondent Target and Respondent Johnson discriminated against Charging Party by failing to engage him in good faith in an interactive process to determine if continued leave was a reasonable accommodation.  Instead, Respondent Target and Respondent Johnson unlawfully terminated Charging Party's employment while he was out on leave.

72.     The ADA prohibits employers from retaliating against an employee for requesting an accommodation.

73.     Respondents Target, Reed and Johnson pretextually terminated Charging Party's employment as a result of Charging Party's request for an accommodation.

74.     The ADA prohibits employers from discrimination against an employee on the basis of the employee's disability.

75.     Respondents Target, Reed and Johnson pretextually terminated Charging Party's employment as a result of Charging Party's disability.

76.     As a direct and proximate cause of the Respondents' unlawful acts and omissions as previously mentioned, Charging Party has been discharged from his position of employment with Respondent Target.

77.     Because of the unlawful actions undertaken by Defendants Target, Reed and Johnson, jointly or severally, Charging Party has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future, and suffer unprovided medical coverage for him and his family and incur unpaid medical bills.

**WHEREFORE**, Charging Party demands judgment against Respondents Target, Reed, and Johnson, jointly or severally, for damages equal to wages, salary, employment benefits, or other compensation denied or lost, plus liquidated damages, interest, and costs of suit.

Dated: April 22, 2020            BY:      /s/ *Kelly E. Adler*

Kelly E. Adler, Esq.
kea@njlegal.com
Matthew A. Luber, Esq.
mal@njlegal.com
R. Armen McOmber, Esq.
ram@njlegal.com
Peter D. Valenzano, Esq.
pdv@njlegal.com
McOmber McOmber & Luber, P.C.
39 East Main Street
Marlton, NJ 08053
(856) 895-9800 Phone
(856) 263-2450 Fax
*Attorneys for Charging Party, Kevin Langner*

*I declare under penalty of perjury that the above is true and correct.*

Dated: 4/22/2020

Kevin Langner
Charging Party

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street
Penthouse, Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

Our Reference:      Kevin Langer v. Target Corporation
                    EEOC Charge No. 530-2020-03450

Kevin Langer
1305 Oak Circle Lane
Lansdale, PA 19446

Dear Mr. Langer:

This is with reference to your correspondence and subsequent communication with this office in which you alleged employment discrimination, in violation of American with Disabilities Act of 1990 (ADA) as amended, by the above-named Respondent.

Review of the available evidence does not establish a violation of the statute.  This does not certify that Respondent is in compliance with the statute.  While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws we enforce.  For this reason, we will issue you a Dismissal and Notice of Rights, which will enable you to file suit in U.S. District Court within 90 days of your receipt of that Notice if you wish to pursue this matter further.

We regret that we could not be of further service to you in this matter.

                                        Sincerely,

12/11/2020                              //SIGNED//
Date                                    Kevin A. Coleman
                                        Federal Investigator

cc:     Kelly E. Adler, Esq.
        (For Charging Party)

EEOC Form 161 (11/16)

## U.S. Equal Employment Opportunity Commission

## Dismissal and Notice of Rights

| | |
|---|---|
| To: **Kevin Langer**<br>**1305 Oak Circle Lane**<br>**Lansdale, PA 19446** | From: **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2020-03450** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed UNDER 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Jamie R. Williamson*

**Jamie R. Williamson,**
**District Director**

December 11, 2020

*(Date Mailed)*

Enclosures(s)

cc:  **TARGET CORPORATION**
**Rachel F. Satinsky, Esq.  (For Respondent)**
**Littler Mendelson PC**
**Three Parkway**
**1601 Cherry Street**
**Philadelphia, PA 19102**

**Kelly E. Adler, Esq.  (For Charging Party)**
**MCOMBER MCOMBER & LUBER, P.C.**
**39 E. Main Street**
**Marlton, NJ 08053**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.